IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOHAMMAD ABUSADEH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-07-3155 |
| | § | |
| MICHAEL CHERTOFF, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT AND APPLICATION FOR ATTORNEY'S FEES

Pending before the court is Plaintiff Mohammad Abusadeh's ("Plaintiff," "Abusadeh") motion for entry of final judgment, and application for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"). (["Motion"], Docket Entry #29). Both Plaintiff and Defendants, Department of Homeland Security, through its Secretary, Michael Chertoff, Emilio Gonzalez, Director, United States Citizenship and Immigration Services ("USCIS"), Sharon Hudson, District Director, Houston USCIS, and Robert Mueller, Director, Federal Bureau of Investigation ("FBI"), have filed responsive and supplemental briefing with regard to this motion. (Defendants' Partial Opposition to Plaintiff's Motion for Entry of Final Judgment and Application for Attorney's Fees ["Response"], Docket Entry #30; Plaintiff's Reply to Defendants' Partial Opposition ["Reply"], Docket Entry #31; Plaintiff's Supplemental Brief ["Supplement"], Docket Entry #33; Defendants' Rejoinder to Plaintiff's Supplemental Brief ["Response to Supplement"], Docket Entry #35). After considering the pleadings, the evidence submitted, and the applicable law, it is RECOMMENDED that Plaintiff's Motion be GRANTED, that the court enter a FINAL JUDGMENT, with prejudice, and that Plaintiff be awarded attorney's fees and costs as detailed in this memorandum.

**Background**

On April 12, 2004, Plaintiff Mohammad Abusadeh applied to become a naturalized citizen of the United States. *See Abusadeh v. Chertoff, et al.*, No. H-07-CV-3155, 2007 WL 4591757, at *1 (S.D. Tex. Dec. 27, 2007). The USCIS is the government agency responsible for adjudicating naturalization applications. *See id*. at *2 (citing 8 U.S.C. § 1421(a)). Under the relevant regulations, an applicant for naturalization is to be interviewed by the USCIS, but only after the FBI has completed a name and background check. *See id*. (citing 8 C.F.R. § 335.2(b)). Following the interview, the USCIS has 120 days to make its determination. *See Walji v. Gonzales*, 500 F.3d 432, 433, 439 (5th Cir. 2007) (citing 8 U.S.C. § 1447(b)). If it fails to do so, the applicant may seek relief in a federal district court. *See id*. In this case, the USCIS interviewed Abusadeh on August 17, 2004, but before the FBI had completed its investigation. *See Abusadeh*, 2007 WL 4591757, at *1. The USCIS took no further action on his application, ostensibly, because it was awaiting the FBI's findings. *See id*. Abusadeh grew tired of the delay and, on August 17, 2006, he filed suit in this court to compel Defendants to adjudicate his application. *See id*. The court remanded the case on jurisdictional grounds, but, on November 27, 2006, Plaintiff filed a new action in the United States District Court for the District of Columbia. *See id*. The District of Columbia court then transferred the case to this court. *See id*. Here, Abusadeh filed a summary judgment motion, seeking the following relief:

> to have this court find that the defendants have unreasonably delayed in processing the naturalization application and either order the defendants to complete the background check by a certain date and then determine the naturalization application itself or to remand the case with instructions that the defendants complete the FBI name checks within 60 days and adjudicate the case "immediately" thereafter.

2

*Id*. In response to that motion, Defendants stated that they did not oppose a remand of the application, but did oppose the imposition of any time constraints upon them. (Docket Entry #20). Defendants also filed their own motion to remand. (Docket Entry #21; *see* Docket Entry #23). On December 27, 2007, the court issued a memorandum and order on both motions, granting Plaintiff's motion and granting, in part, Defendants' motion. (Docket Entry #24). In short, the court agreed with all parties that the case should be remanded, but also agreed with Plaintiff that the remand order include instructions designed to expedite processing his application. Those instructions read as follows:

> Within 14 days, the USCIS must order the FBI to expedite the name check on Abusadeh.
>
> Within 60 days from the date the FBI completes the name check and reports the results to the USCIS, or by April 2, 2008, whichever is earlier, the USCIS must report to this court, in writing, as to whether the FBI has completed the name check on Abusadeh and reported the results to the USCIS. If not, the USCIS must report on the status of the name check and the reasons for the failure to complete it.
>
> Within 30 days of receiving the report of the results of the name check from the FBI, the USCIS must decide Abusadeh's naturalization application.
>
> If the decision is to grant the application, the USCIS must permit Abusadeh to be naturalized as a citizen within 30 days.

*Abusadeh*, 2007 WL 4591757, at *5. Approximately two months later, Abusadeh's application was approved. (Docket Entry #28; Motion at 7). It was at that point that Plaintiff filed the pending motion, on the premise that he is the prevailing party. (Motion at 6).

**Discussion**

3

In his motion, Plaintiff makes two requests. The first of these is "that the Court enter a final judgment in this action as on February 28, 2008, the Defendants have notified the Court that the USCIS has decided to approve Abusadeh's naturalization application." (*Id.*). The second is a request for an award of attorney's fees and other expenses under the EAJA, which is codified at 28 U.S.C. § 2412(d). (*Id.*). In the latter, Plaintiff seeks one of the following awards: (i) the sum of $62,155.00, as calculated at "the market rate in Houston for attorneys with similar qualifications and experience" to his attorneys; or (ii) the sum of $36,686.59, as calculated at the rate provided by statute, after adjustment for cost of living. (*Id.* at 16). The award sought includes not only the fees incurred in prosecuting the case in this court, but also those generated during Plaintiff's original lawsuit, as well as in the action filed in the District of Columbia. (*Id.* at 17). In response to Plaintiff's motion, Defendants raise no objection to the entry of a final judgment in this case, so long as the judgment provides that the action is dismissed, with prejudice, as moot because Abusadeh's application was approved. (Response at 1). They oppose, however, any award of attorney's fees on the ground that Plaintiff is not a "prevailing party," as required by the EAJA. (*Id.* at 1-4). In the alternative, Defendants argue that, if Plaintiff is a prevailing party, he is not entitled to an award of attorney's fees under the EAJA because the position of the United States was "substantially justified." (*Id.* at 1, 4-6). Plaintiff has not challenged a final judgment that recites that the case is dismissed, as moot. For these reasons, the court recommends that a final judgment of dismissal, with prejudice, be entered.

Once a final judgment has been entered in a case, a party may seek an award of attorney's fees under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412(d)(1)(A). That Act provides, as follows:

4

> [e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Id.* One is said to be a "prevailing party" if "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Bailey v. Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005); *accord Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). In this case, the court granted Plaintiff's motion for summary judgment, finding the issues in his favor as a matter of law. (Docket Entry #24). And, in that order, the court granted Plaintiff's request for a remand of the application with specific instructions to expedite its adjudication. *See Abusadeh*, 2007 WL 4591757, at *5. Plaintiff, then, was granted "actual relief on the merits of his claim" in a manner that "materially alter[ed] the legal relationship between the parties" to his benefit. *See Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 604; *Bailey*, 407 F.3d at 687.

But Defendants argue that Plaintiff did not actually prevail, because they "voluntarily" acted to expedite the application in October, 2007, two months before this court issued its memorandum and order. (Response at 4). The United States Supreme Court has addressed similar circumstances in the following manner:

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing

5

>party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties.

*Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 605 (emphasis in original). Defendants' argument fails here, however, as they have not shown that it was their voluntary action, and not the court's order, that gave Abusadeh the relief he sought. Indeed, it appears that Defendants did not inform the court of any attempt to expedite the process until after the memorandum and order was entered, when they filed a "notice to the court of compliance." (Docket Entry #25). In that notice, Defendants reported the following:

>On December 27, 2007, this Court ordered the USCIS to order the FBI to expedite the name check on Abusadeh.
>
>USCIS confirmed today to its trial counsel that an expedite request was made and the request was received by the FBI on October 16, 2007.

(*Id.*). In addition, the court's docket belies the contention that Defendants actively sought to expedite the process. For example, between October 16, 2007, and the date of the memorandum and order, Defendants filed four pleadings in which they argued that the process could not be expedited. (Docket Entries #19, 20, 21, and 23). Defendants also directly opposed the entry of an order imposing the time limits Plaintiff requested. Finally, the court evidently deemed it necessary, or, in any event, appropriate to issue an order granting Plaintiff's request, and compelling an expedited processing of Abusadeh's application. That order would not have been necessary if Defendants were already giving Plaintiff the relief that he sought. In this case, then, it is clear that Plaintiff prevailed on his claims through the decision of the court, as opposed to the voluntary actions of Defendants. For this reason, Plaintiff was the "prevailing party" in this action, for purposes of the EAJA. *See Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 604-05; *Bailey*, 407 F.3d at 687.

However, as Defendants point out, even if a party "prevails," he is not entitled to an award of attorney's fees under the EAJA if the government's position was "substantially justified," or if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "The Supreme Court has interpreted the phrase substantially justified to mean 'justified to a degree that could satisfy a reasonable person.'" *United States v. Truesdale*, 211 F.3d 898, 908 (5th Cir. 2000) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *see Knights of the Ku Klux Klan v. East Baton Rouge Parish Sch. Bd.*, 679 F.2d 64, 68 (5th Cir. 1982). The Court has also held that a "substantially justified position" is one that has a "'reasonable basis in law and fact.'" *Truesdale*, 211 F.3d at 908 (quoting *Underwood*, 487 U.S. at 566 n.2). The government bears the burden to prove that its position was substantially justified for purposes of the EAJA. *See Davidson v. Veneman*, 317 F.3d 503, 506 (5th Cir. 2003) (citing *Herron v. Bowen*, 788 F.2d 1127, 1130 (5th Cir. 1986)); *Bazaldua v. United States I.N.S.*, 776 F.2d 1266, 1269 (5th Cir. 1985). In this case, Defendants argue that their "prelitigation and initial litigation positions were substantially justified based on the then existing prevailing case law." (Response at 5). They refer, specifically, to the Fifth Circuit's holding in *Walji*, a case that was decided in September, 2007, while this action was pending. *See* 500 F.3d at 432.

Before the *Walji* decision, the 120-day period in which the USCIS must act before an applicant can seek judicial recourse was considered to begin to run only after completion of the background investigation, including the FBI checks. *See id.* at 433, 439; *Abusadeh*, 2007 WL 4591757, at *2-3. In *Walji*, however, the Fifth Circuit held that the 120-day period begins to run once the USCIS has concluded its interview, even if the FBI checks have not been completed. *See* 500 F.3d at 438-39. For Abusadeh, this holding confirmed that he was entitled to seek judicial

7

recourse within 120 days after the USCIS interviewed him in August, 2004. Defendants claim that, until *Walji* was decided, the USCIS was justified in its failure to act because it "was not able to adjudicate plaintiff's application" until the FBI completed its background checks. (Response at 5-6). In its memorandum and order, however, the court pointed out that the USCIS's delay on this matter was "extreme—three and one-half years." *Abusadeh*, 2007 WL 4591757, at *4. The court noted, as did the *Walji* court, that the USCIS was not supposed to interview applicants until the FBI checks were completed, which frustrates the "clear intent of Congress [] to accelerate naturalization applications." *Id*. at *2, 4 (quoting *Walji*, 500 F.3d at 439). The court also stated that the USCIS, by its own admission, "often directs that a name check be handled on an 'expedited' basis," but that it had not done so in this instance despite the three and one-half year delay. *Id*. at *3. Further, as detailed earlier, Defendants have not shown that, following *Walji*, it was their voluntary actions, and not the court's ruling, that allowed Plaintiff the relief he was seeking. Indeed, Defendants continued to argue against setting timelines for completing Abusadeh's application even after *Walji* was decided. Under these circumstances, Defendants have simply not met their burden to show that their actions were substantially justified. *See Davidson*, 317 F.3d at 506; *Truesdale*, 211 F.3d at 908. As the prevailing party, then, Plaintiff is entitled to an award of attorney's fees under the EAJA.

Plaintiff seeks an award of either $62,155.00, a sum which represents fees and expenses calculated at the market rate for like attorneys in Houston, or the sum of $36,686.59, which represents fees and expenses calculated at the statutory rate, as adjusted for the cost of living. (Motion at 16). Both of these sums include not only fees and the expenses incurred in prosecuting the case before this court, but also those incurred during Plaintiff's original lawsuit and in the action

he filed in the District of Columbia. (*Id*. at 17). Defendants do not address this portion of Plaintiff's motion, aside from the following statement:

> In the event the Court were to consider the substance of a fee request, Defendants request a hearing to controvert the quantum of fees.

(Response at 7). As a general rule, "in determining the amount of attorneys' fees, the district court enjoys discretion." *Perales v. Casillas*, 950 F.2d 1066, 1074 (5th Cir. 1992); *accord Yoes v. Barnhart*, 467 F.3d 426, 426 (5th Cir. 2006). However, that discretion is limited by the guidelines that the EAJA sets out for determining the amount of an award of attorney's fees. *See Perales*, 950 F.2d at 1074. The Act provides, in pertinent part, as follows:

> For the purposes of this subsection--
>
> (A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee).

28 U.S.C. § 2412(d)(2)(A). In this case, Plaintiff has submitted affidavits from attorneys Bruce Coane, Haroen Calehr, and Rosemary Vega in an attempt to show that he is entitled to an award above the statutory rate because there are only a limited number of attorneys in this area who are qualified to handle claims of this nature. (Motion at 15 and Exhibit C). However, the Fifth Circuit has rejected the notion that immigration law expertise is necessarily a reason to grant an award above

9

the statutory rate, stating,

> [i]n a sense, every attorney practicing within a narrow field could claim specialized knowledge. Although the district court found that "[i]mmigration law is a specialty area requiring an extensive and current knowledge of applicable statutes and regulations," such is true for virtually any area of law, particularly those involving the intricate federal statutory schemes that typically give rise to awards under the EAJA.

*Perales*, 950 F.2d at 1078; *see Coastal Conservation Ass'n v. Gutierrez*, 2008 WL 4450313, at *6 (slip copy) (S.D. Tex. Sept. 30, 2008). In light of this, the Fifth Circuit found that an award of fees based on the market rate is not justified unless "the number of competent attorneys who handle cases in [a] specialized field is so limited that individuals who have possibly valid claims are unable to secure representation." *Perales*, 950 F.2d at 1078. Here, Plaintiff has not shown that he is entitled to an award above the statutory rate based on the expertise and availability of immigration lawyers in Houston, Texas. For that reason, the court must look to the statutory rate. *See* 28 U.S.C. § 2412(d)(2)(A).

Under the EAJA, the statutory rate of $125.00 per hour may be adjusted to reflect "an increase in the cost of living." 28 U.S.C. § 2412(d)(2)(A). While the Fifth Circuit has noted that such an adjustment is not "required" by the statute, it has held that Congress's intent is "that cost of living be seriously considered by the fee-awarding court." *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir. 1988). A review of the historical notes of the EAJA shows that the statute was last amended in 1998. *See* 28 U.S.C. § 2412 (Historical and Statutory Notes). The Consumer Price Index for All Urban Consumers, submitted by Plaintiff as an exhibit to his motion, shows that the cost of living for this area has increased over the years. (Motion at 16 and Exhibits D and E). That exhibit also shows that the rate for the relevant services in Houston in December, 2007, was $186.25. (*Id.*). Under these circumstances, Plaintiff should be awarded the statutory rate adjusted to

reflect the increase in the cost of living. *See Baker*, 839 F.2d at 1084. Further, it is reasonable that Plaintiff be allowed to recover the fees and expenses involved in litigating this suit from its inception, as filed in the District of Columbia. Plaintiff has not shown, however, any ground on which the court can award fees that he incurred in litigating a separate lawsuit that he chose not to appeal, opting instead to file a new action. Under these circumstances, the court finds that Plaintiff is entitled to an award of attorney's fees and costs at the statutory rate, plus an increase for the cost of living, for the period encompassing the history of this lawsuit. Because the court finds that such an award is reasonable, a hearing on this issue is unnecessary.

**Conclusion**

Accordingly, the court **RECOMMENDS** that Plaintiff's motion for entry of final judgment and application for attorney's fees pursuant to the Equal Access to Justice Act be **GRANTED**.

The court **RECOMMENDS** that a final judgment, with prejudice, be entered in this case.

The court further **RECOMMENDS** that Plaintiff be awarded attorney's fees under the EAJA. Should this memorandum be adopted, Plaintiff has ten days from the date of that order to specify the correct amount of fees, calculated as set out in this opinion.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have ten business days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 02-13, S.D. Texas. Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the

11

chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 17th day of October, 2008.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**